UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 07-75-EBA

LISA LANDERS,                                                                                          PLAINTIFF,

V.      **MEMORANDUM OPINION
AND ORDER**

CHLN, INC.,                                                                                            DEFENDANT.

## I. INTRODUCTION

Lisa Landers [Landers], was a bartender at a restaurant operated by CHLN, Inc., in Newport, Kentucky from October 24, 2005, until she was terminated on June 18, 2006. [R. 6]. In this action she alleges that beginning on April 22, 2006, she was subjected to "inappropriate and unwelcome" acts of sexual harassment creating a hostile work environment. As a result of her complaints to management regarding the harassment, she alleges that she was wrongfully discharged on June 18, 2006. In addition, Landers, who is white, attributes her firing to the Defendant's unlawful racial discrimination against her as she has a bi-racial child and associates with African-Americans. Finally, she includes in this action a state law claim for Intentional Infliction of Emotional Distress. [R. 1]. The deadline for discovery having passed, the Defendant seeks summary judgment in its favor on all of Landers' claims. [R. 24] For the reasons stated herein, the Court will grant the Defendant's Motion for Summary Judgment. [R. 24].

## II. FACTUAL BACKGROUND

On October 24, 2005, Landers was hired to work at the Chart House, in Newport, Kentucky, a restaurant operated through the Defendant, CHLN. [R. 1, 6]. Landers testified that her employment was uneventful until April 22, 2006, when a server requested whipped cream for a coffee drink. [R. 24, Ex.3, pp. 63, 129]. Upon handing whipped cream to the server Landers asked if that was what the server wanted. [R. 24, Ex. 3, p. 129]. Landers alleges that Joe Olszewski [Olszewski], an assistant manager, stated, "Only if I can spray it on and lick it off as a whip cream bikini." [R. 24, Ex. 3, p. 130]. Landers alleges that she verbally complained to Jeff Secrist [Secrist] the General Manager regarding the whipped cream remark. [R. 24, Ex. 3, p. 131]. In addition to this comment, Landers also alleges that Olszewski hugged her less than five times and once commented about how nice her chest was. [R. 24, Ex. 3, pp. 126, 127, 141-142]. She testified that once while being hugged, she asked Olszewski why he was touching her, however, he simply laughed it off. [R. 24, Ex. 3, p. 127]. Landers only reported the unwelcome hugging to Troy Becker, another bartender, and did not report the incident to anyone else. [R. 24, Ex. 3, p. 127].

Landers also alleges that there was another incident with Olszewski when she spilled wine on her shirt, tie and pants, and was trying to wipe the stain in order to appear more presentable. [R. 24, Ex. 3, p. 128]. Olszewski began to wipe the front of her shirt with a towel, commenting: "I'll help you wipe this off, but I want to be able to lick it first." [R. 24, Ex. 3, pp. 128, 132]. Landers told Olszewski to never touch her again, and he complied. [R. 24, Ex. 3, p. 128]. Landers did not report this incident to Secrist, and did not report the incident "up the chain." [R. 24, Ex. 3, p. 141, 143]. Aside from this and the hugging incidents on less than five occasions, Landers states that Olszewski did not touch her at any other time. [R. 24, Ex. 3, pp. 127-128]. Landers alleges that on one occasion,

2

Olszewski was speaking of her breasts in comparison to another employee and, when confronted by Landers, stated:

> Katie told me that, and I approached Joe, and I said, "Why are you talking about this stuff?" And he said that, you know, he likes tits, and he flipped it. He said that mine were fantastic and that Katie's were babies. I told him I did not want to hear anything like that again.

[R. 24, Ex. 3, p. 142]. She made no complaint of the incident to Secrist. [R. 24, Ex. 3, p. 143].

Landers also complains of an incident when Dennis Chastang [Chastang], an assistant manager, treated all of the Chart House bartenders to dinner. [R. 24, Ex. 3, p. 69]. During dinner, Chastang allegedly squeezed her cheek between his finger and thumb and, in front of the group said, "Oh, you're so cute". [R. 24, Ex. 3, p. 160]. On another occasion, Chastang allegedly asked Landers to go out with him, and sometimes put his arm around her shoulders. [R. 24, Ex. 3, pp.161-62, 167, 168]. Landers alleges that on two occasions, she ". . . told Jeff [Secrist] that if Dennis did not keep his hands off of me and stop treating me the way that he was, I was going to put in my two weeks." [R. 24, Ex. 3, p. 162]. Landers alleges that Mike Whalen [Whalen], a chef, rubbed her arm or put his hand on her rear end when he came behind the bar. [R. 24, Ex. 3, p. 148-49, 151]. He also attempted to photograph Landers' rear end on one occasion, but ceased upon Secrist stating to Whalen "You shouldn't be doing that." [R. 24, Ex. 3, p. 151). Landers also testified that Whalen sent her inappropriate text messages. [R. 24, Ex. 3, p.153]. Finally, Landers alleges that a cook, Brian Lovell, gave his phone number to her in a note that said, "for a good time, call. . . ." [R. 24, Ex. 3, p.191].

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the

3

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). While the court must view all facts in the light most favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the pleadings, see Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In other words, "the nonmoving party must present 'significant probative evidence' to show that 'there is [more than] some metaphysical doubt as to the material facts.'" Dixon v. Gonzales, 2007 WL 750532 (6th Cir. 2007) *citing* Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993). Thus, where the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 586-87.

## IV. ANALYSIS

Landers presents claims of Hostile Work Environment/Sexual Harassment, Retaliation, Discrimination based on personal association, and Intentional Infliction of Emotional Distress. As an initial matter, the Defendant argues that the Plaintiff's claim of intentional infliction of emotional distress ("IIED") is subsumed by her statutory claim of discrimination. In addition, the Defendant argues that the Plaintiff's claims asserted under Title VII are barred by her failure to obtain a "right

4

to sue" letter from the Equal Employment Opportunity Commission.

## A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Defendant argues that Landers' claim of Intentional Infliction of Emotional Distress is subsumed by other statutory claims of discrimination. The question of whether, under Kentucky law, statutory claims of discrimination subsume claims of emotional distress has previously been addressed in this Circuit. See Messick v. Toyota Motor Mfg., Inc., 45 F.Supp.2d 578 (E.D. Ky. 1999) (overruled on other grounds). The plaintiff in Messick filed a sexual harassment claim under the Kentucky Civil Rights Act, and an IIED claim. Id. at 579. Upon considering a motion to dismiss the plaintiff's IIED claim, the Court held that dismissal of the claim was appropriate since :

> Under Kentucky law, when damages for emotional distress are available through a traditional state tort claim, and the conduct was not intended only to cause extreme emotional distress, an emotional claim will not lie. ... '[T]he tort of outrage [is] intended to supplement the existing forms of recovery, not swallow them up.' Therefore, because Plaintiff finds an existing form of recovery for her emotional distress under the Kentucky Civil Rights Act, she fails to state a claim of intentional infliction of emotional distress.

Id., *quoting* Rigazio v. Archdiocese of Louisville, 853 S.W.2d 295, 299 (Ky. App.1993).

The Kentucky Court of Appeals reached the same conclusion in Wilson v. Lowe's Home Center, 75 S.W.3d 229 (Ky. App.2001). In Wilson, the plaintiff filed a complaint against Lowe's, alleging racial discrimination in violation of the Kentucky Civil Rights Act, as well as an IIED claim against Lowe's and three individually-named defendants. Id. at 231. The defendants moved for summary judgment on the plaintiff's IIED claim, arguing that it was preempted by the statutory claim of discrimination. Id. As to Lowe's, the Court held that the IIED claim was subsumed by the statutory discrimination claim:

> KRS 344.020(1)(b) extends protection to the 'personal dignity and freedom from humiliation' of individuals. This has been interpreted as allowing claims for

>humiliation and personal indignity.  Similarly, an IIED claim seeks damages for extreme emotional distress.  Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute.  Thus, [the Plaintiff's] IIED claim against Lowe's was subsumed by his KRS Chapter 344 claims.  The same conclusion was reached by the federal court in Messick v. Toyota Motor Manufacturing, Kentucky, Inc., 45 F.Supp.2d 578, 582 (E.D.Ky.1999).  Therefore, we affirm the trial court's dismissal of [the Plaintiff's] claim against Lowe's.[1]

Id. at 239 (citations omitted).  See also Kroger Co.v. Buckley, 113 S.W.3d 644, 647 (Ky. App.2003) (noting that "Wilson is clear and unambiguous in its holding that a KRS Chapter 344 claim preempts a common law IIED/outrageous conduct claim.").

The Court finds that the aforementioned case-law is controlling in the present case.  As in Messick and Wilson, the Plaintiff filed a statutory claim of discrimination under the Kentucky Civil Rights Act and a common-law IIED claim.  Her IIED claim is subsumed by the statutory claims of discrimination she asserts in this action.  Accordingly, the Court will grant the Defendant's Motion for Summary Judgment with respect to Landers' Intentional Infliction of Emotional Distress claim.

### B.  TITLE VII AND EEOC RIGHT TO SUE LETTER

The Defendant further argues in its Motion for Summary Judgment that the Plaintiff's Title VII claims are barred because she did not exhaust her administrative remedies by obtaining a right to sue letter from the Equal Employment Opportunity Commission [EEOC].

Title VII requires plaintiffs to file a timely charge of employment discrimination with the EEOC and obtain a right-to-sue letter before filing suit.  See 42 U.S.C. § 2000e-5(f)(1); Granderson v. University of Michigan, 211 Fed.Appx. 398, 400 (6th Cir. 2006).  The requirements are not

---

[1] The Wilson Court held that the plaintiff's IIED claim against the individually-named defendants was not preempted, however, because no civil rights claim could have been maintained against them.

6

jurisdictional prerequisites to suit, but rather conditions precedent.  See Rivers v. Barberton Bd. Of Educ., 143 F.3d 1029, 1031-32 (6th Cir. 1998); Parry v. Mohawk Motors of Michigan, 236 F.3d 299, 309 (6th Cir. 2000).   In the instant case, evidence of a right to sue letter is absent and there is no indication that the Plaintiff attempted to obtain a right to sue letter either before or subsequent to filing suit.  The Court can find no evidence of, and the Plaintiff makes no argument justifying waiver, estoppel, and equitable tolling of the requirement to obtain a right to sue letter.  See Rivers, 143 F.3d at 1031. Therefore, the Court finds that the Plaintiff's Title VII claims are barred for failure to exhaust administrative remedies.  Accordingly, the Defendant's Motion for Summary Judgment will be granted with respect to the Plaintiff's Title VII claims.

### C.  DISCRIMINATION UNDER THE KENTUCKY CIVIL RIGHTS ACT

In her complaint, Landers seeks relief under the Kentucky Civil Rights Act for Hostile Work Environment Sexual Harassment, Retaliation, and Race Discrimination.  The Defendant seeks summary judgment on all claims.  The Court will address the arguments in turn.

#### 1.  Hostile Work Environment Sexual Harassment

In order to assert a *prima facie* claim of sexual harassment based on hostile work environment, the plaintiff must show by a preponderance of the evidence " . . . (1) that she was a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment unreasonably interfered with her work performance by creating a hostile, offensive or intimidating work environment; and (5) that there is a basis for employer liability." Thornton v. Federal Express Corp., 530 F.3d 451, 455 (6th Cir. 2008) *citing* Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999).  The Defendant argues that even if

Landers meets the first three requirements, her claim necessarily fails, as it fails the fourth element: whether, under the law, the alleged harassment ". . . unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment." Thornton, 530 F.3d at 455. On this issue, Landers must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). This inquiry must satisfy both an objective and subjective inquiry: "The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000). The question of whether a particular work environment was tainted by severe or pervasive harassment will necessarily depend on the facts of a particular case. Harris, 510 U.S. at 22. In its inquiry the Court must consider " 'all of the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance.'" Thornton, 530 F.3d at 455 *citing* Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999.

     The case of Howington v. Quality Restaurant Concepts, LLC, 2008 WL 4659652 (6th Cir. 2008)(unpublished), is instructive. In Howington, the plaintiff's supervisor asked her to have sex with him daily. In addition, he asked to perform oral sex on the plaintiff. He became increasingly angry with the plaintiff, yelling at her on occasion in front of customers or slamming a door in her face. Finally, he sent text messages to her threatening to have her fired if she did not have sex with him, and disciplined her on two separate occasions. Id. at *6. In Howington, the Court found the

defendant's behavior continuous and commonplace in the work environment, and found that a reasonable person could find his actions sufficiently severe or pervasive. Id. at *7. Compare the case of Stacy v. Shoney's Inc., 142 F.3d 436, 1998 WL 165139 (6th Cir. Mar.31, 1998)(unpublished). In Stacy, a waitress's supervisor made sexually suggestive comments and leering looks. Id at *1. When they did not work on the same shift, the supervisor would call her to say that he missed her, and when they did work together, he would comment that her "tan sure does look good" and that he "wished he could see more of it." Id. The supervisor also told her that if he had someone that looked like her he'd not let her leave the house. Id. Finally, the waitress reported that the supervisor inappropriately touched her breast. Id. In Stacy, the Court found the conduct not sufficiently frequent, severe, physically threatening, or humiliating to unreasonably interfere with work performance to constitute harassment, and granted the defendant summary judgment. Id. at *3.

Like the plaintiff in Stacy, Landers alleges conduct which, when taken together, does not constitute harassment in violation of the Kentucky Civil Rights Act. Her allegations of inappropriate conduct as set forth above are insufficient to satisfy either the subjective or objective inquiry regarding whether the conduct is not sufficiently frequent, severe, physically threatening, or humiliating to unreasonably interfere with her work performance   See Bowman, 220 F.3d at 463. The Court finds revealing the fact that Landers admittedly never complained, asked for company assistance, or took any other action to protect herself from what she now characterizes as inappropriate conduct and to put the company on notice so that it could take corrective or preventive action.  [R. 24, Ex. 3, pp. 127, 132-34, 141, 143, 153].

## 2.  RETALIATORY DISCHARGE

To establish a *prima facie* case of retaliation, Landers much establish that:  (1) she engaged

in protected activity; (2) the Defendant knew of the exercise of her civil rights; (3) subsequently, the Defendant took an employment action adverse to the Plaintiff; and (4) the adverse employment action was a result of her exercise of the protected activity. See Arendale v. City of Memphis, 519 F.3d 587, 6060 (6th Cir. 2008). In the instant action, Landers arguably satisfies the first three prongs as she alleges that she complained of unwelcome conduct, to the Defendant (through its managers) and was subsequently fired. Therefore, the Court's inquiry must focus on the fourth, and last, element - whether Lander's conduct was causally related to her discharge. It is undisputed that the decision to discharge Landers was made by Secrist. Although Landers asserts that she made her objections to the alleged offensive conduct known to the local managers, aside from telling Secrist that she felt Olszewski's comment regarding the whipped cream was "inappropriate," Landers did not complain to Secrist about her other allegations. [R. 24, Ex.3, p.131]. She did not report any of the other alleged incidents to anyone at the company, either in person or through the toll-free hotline. [R. 24, Ex. 3, pp. 127, 141, 143, 146]. She admittedly never complained, asked for company assistance, or took any other action to protect herself from what she now characterizes as inappropriate conduct and to put the company on notice so that it could take corrective or preventive action. [R. 24, Ex. 3, pp. 127-28, 132-34, 141, 143, 153, 165]. As a result, the Court cannot find that the plaintiff establishes a *prima facie* claim of retaliatory discharge, and the Defendant is entitled to summary judgment.

   3. DISCRIMINATION IN VIOLATION OF RIGHT TO FREE ASSOCIATION

In the instant action, Landers alleges that she was discharged in violation of her right of association in violation of Title VII and 42 U.S.C. § 1981. Specifically, Landers, who is white, alleges that she was discharged because she has a biracial child and associates with African-

10

Americans. The law is established that in order to state a cognizable claim of race discrimination, the plaintiff need not be a member of a recognized protected class; rather she need only allege that she was discriminated against due to her association with a member of a recognized protected class. See Tetro v. Popham, 173 F.3d 988, 994 (6th Cir. 1999)("[a] white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child."). Having addressed the issue of whether Landers may assert a claim of discrimination in violation of her right of free association, the Court will turn to the elements of the claim.

"A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination." Johnson v. University of Cincinnati, 215 F.3d 561, 572, (6th Cir. 2000) *citing* Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). In the instant matter, Landers has no direct evidence of discriminatory intent in her discharge. She argues that her discharge came after being seen dining with an African-American, and based upon the fact that she has a bi-racial child. "While Ms. Landers is not black, she believes that her association with black men is at least part of the motivation for her termination." [Plaintiffs Response in Opposition to the Defendant's Motion for Summary Judgment, R. 35, p.4]. As evidence of racial animus, Landers relates overhearing Secrist say: "I have an assistant general manager who's a nigger lover and a gay may for a dining room manager." [R. 24, Ex. 3, p. 171]. Under these circumstances, the Court must apply the McDonnell Douglas/ Burdine burden shifting test, which requires the Plaintiff to establish a *prima facie* case of discrimination by showing: (1) that the Plaintiff is a member of a protected class; (2) that she was qualified for the job and performed satisfactorily; (3) that despite of her qualification

11

and performance, she suffered adverse employment action; and (4) that she was replaced by a person outside the protected class or was otherwise treated less favorable than a similarly situated person. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

In the instant action the Plaintiff can show that she is a member of a protected class as discussed above. In addition, assuming *arguendo* that a question of fact exists regarding her performance and qualifications, she did in fact suffer adverse employment action when she was terminated. However, the record is absent any evidence to show that she was treated less favorably than a similarly situated individual outside of her protected class. Landers of course contends that the reason given by the defendant for her discharge is a mere pretext, a mask behind which to hide the true reason for her termination - her association with African-Americans and her biracial child. She argues in her affidavit that another bartender, Tobias Hoppe, was observed treating his girlfriend to a free beer and was not terminated. Her only proof of this alleged difference in treatment is her statement, through counsel that " . . . Ms. Landers learned that another bartender, Tobias Hoppe, was actually observed – and admitted to serving an un-charged drink to his girlfriend. Not just once, but TWICE." [R. 35, p. 6]. The record reveals that although Landers believes this to have occurred, she has produced no evidence of such an occurrence. Therefore, under the McDonnell-Douglas test, she cannot make out a *prima facie* case of discrimination, and the Defendant is entitled to summary judgment on her claim.

## V. CONCLUSION

Therefore, for the reasons stated herein, the Court finds that the Defendant is entitled to summary judgment on all of plaintiff's claims. Accordingly,

IT IS ORDERED that the Defendant's Motion for Summary Judgment [R. 24] is GRANTED.

IT IS FURTHER ORDERED that the matter is DISMISSED from the Court's active docket.

This is a final and appealable order and there is no just cause for delay.

This the 25th day of March, 2009.

